J-S25013-14

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| GEORGE LEE BARNES | |
| Appellant | No. 1104 MDA 2013 |

Appeal from the Judgment of Sentence May 13, 2013
In the Court of Common Pleas of Luzerne County
Criminal Division at No(s): CP-40-CR-0000826-2012

BEFORE:  OTT, J., STABILE, J., and MUSMANNO, J.

MEMORANDUM BY OTT, J.:                    **FILED AUGUST 22, 2014**

George Lee Barnes appeals from the judgment of sentence entered May 13, 2013, in the Luzerne County Court of Common Pleas.  Barnes was sentenced to an aggregate term of 75 to 150 months' imprisonment, after a jury found him guilty of carrying a firearm without a license, resisting arrest, possession with intent to deliver (PWID) cocaine, and possession of cocaine.[1]  On appeal, Barnes challenges the sufficiency of the evidence supporting his conviction of possession of a firearm.  For the reasons set forth below, we affirm.

The evidence presented at trial was as follows.  Officer John Sosnoski of the Kingston Borough Police Department was on routine patrol on

---

[1] 18 Pa.C.S. §§ 6106(a)(1) and 5104, and 35 P.S. §§ 780-113(a)(30) and 780-113(a)(16), respectively.

December 23, 2011, when, at approximately 7:44 p.m., he observed a dark colored sedan driving southbound on Route 11 with the lights off. The sedan matched the description of a vehicle that had been stolen at gunpoint the previous night.[2] Officer Sosnoski, who was traveling northbound on Route 11, made a U-turn and activated his lights so that he could stop the vehicle to investigate. However, when he began following the vehicle, the vehicle took off at a high rate of speed, swerving in and out of the north and southbound lanes. Officer Sosnoski lost sight of the vehicle for a brief period, but then saw that the car had crashed into a telephone pole. N.T., 3/11/2013, at 52-53.

When he approached the vehicle, the officer saw that the driver's legs were pinned in the crash. Officer Sosnoski also observed that the front seat passenger, later identified as Barnes, was uninjured, and another passenger, who was sitting in the backseat behind the driver, suffered a minor injury. *Id.* at 54. The officer approached the vehicle and asked the occupants to show their hands, which they refused to do. Because the driver was injured, Officer Sosnoski approached the passenger side where Barnes was sitting. At this point, additional officers had arrived to assist Officer Sosnoski. When Officer Sosnoski attempted to escort Barnes out of the vehicle, Barnes

_____

[2] Officer Sosnoski testified that, the night before, the Wilkes-Barre police "put out a Be On The Lookout or a BOLO for a black Lincoln SUV that was stolen outside of Wilkes-Barre at gun point." N.T., 3/11/2013, at 53.

resisted, saying "get the fuck off me[,]" and began throwing punches at the officers. *Id.* at 56-57. He struck one officer, causing her to fall to the ground. As the other officers struggled to contain Barnes, they all fell to the ground "kind of like a wrestling match," until one officer deployed a Taser to subdue him. *Id.* at 58.

During the scuffle, Officer Sosnoski noticed a cigarette packet fall to the ground. Afterwards, the officers opened it and discovered what appeared to be crack cocaine. Furthermore, inside the vehicle, Officer Sosnoski observed a .40 caliber handgun protruding from underneath the front passenger seat, with the grip facing the front of the vehicle.[3] *Id.* at 60. He explained that the gun was situated so that "[y]ou can actually reach under it for easy access." *Id.* at 88-89.

Barnes was arrested and charged with carrying a firearm without a license, resisting arrest, PWID and possession of cocaine. On March 12, 2013, a jury returned a verdict of guilty on all charges. Barnes was sentenced, on May 13, 2013, to a term of 12 to 24 months' imprisonment for possession of a firearm, a consecutive three to six months' imprisonment for resisting arrest, and a consecutive 60 to 120 months' imprisonment for

_____

[3] Officer Sosnoski testified that he "could see the grip and the back butt of the gun" protruding from underneath the front passenger seat, but that the gun was "wedged" in the seat and had to be pulled out "physically." N.T., 3/11/2013, at 87.

PWID,[4] for an aggregate sentence of 75 to 150 months' imprisonment. This timely appeal followed.[5]

The sole issue raised on appeal challenges the sufficiency of the evidence supporting Barnes's firearm conviction. Specifically, Barnes argues the Commonwealth failed to prove that he had either actual or constructive possession of the firearm recovered from the stolen vehicle.

Our review of a challenge to the sufficiency of the evidence is well-settled:

> A claim challenging the sufficiency of the evidence presents a question of law. **Commonwealth v. Widmer**, 560 Pa. 308, 744 A.2d 745, 751 (2000). We must determine "whether the evidence is sufficient to prove every element of the crime beyond a reasonable doubt." **Commonwealth v. Hughes**, 521 Pa. 423, 555 A.2d 1264, 1267 (1989). We "must view evidence in the light most favorable to the Commonwealth as the verdict winner, and accept as true all evidence and all reasonable inferences therefrom upon which, if believed, the fact finder properly could have based its verdict." **Id.**

Our Supreme Court has instructed:

> [T]he facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may

_____

[4] His possession charge merged for sentencing purposes.

[5] On June 11, 2013, the trial court ordered Barnes to file a concise statement of matters complained of on appeal. Thereafter, trial counsel was granted permission to withdraw and present counsel was appointed. On July 3, 2013, present counsel filed a motion seeking an extension of time to file a concise statement since the trial transcript had not yet been transcribed. The court granted counsel's motion, and on September 23, 2013, counsel filed a concise statement.

be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the trier of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

*Commonwealth v. Ratsamy*, 594 Pa. 176, 934 A.2d 1233, 1236 n. 2 (2007).

*Commonwealth v. Thomas*, 65 A.3d 939, 943 (Pa. Super. 2013).

The crime of carrying a firearm without a license is defined in Section 6106 of the Crimes Code as follows:

[A]ny person who carries a firearm in any vehicle or any person who carries a firearm concealed on or about his person, except in his place of abode or fixed place of business, without a valid and lawfully issued license under this chapter commits a felony of the third degree.

18 Pa.C.S. § 6106(a)(1). Therefore, in order to secure a conviction under the facts of the present case, the Commonwealth was required to prove that Barnes was in possession of the firearm recovered from the stolen vehicle, without a valid license to carry a firearm. Here, Barnes does not challenge the fact that he had no license to carry a firearm, but rather, contends the Commonwealth failed to prove he had constructive possession of the firearm recovered from the vehicle.

When a firearm or other prohibited item is not discovered on a defendant's person, or in their actual possession, the Commonwealth may prove the defendant had constructive possession of the item.

- 5 -

> Constructive possession is a legal fiction, a pragmatic construct to deal with the realities of criminal law enforcement. Constructive possession is an inference arising from a set of facts that possession of the contraband was more likely than not. We have defined constructive possession as conscious dominion. We subsequently defined conscious dominion as the power to control the contraband and the intent to exercise that control. To aid application, we have held that constructive possession may be established by the totality of the circumstances.
>
> **Commonwealth v. Brown**, 48 A.3d 426, 430 (Pa. Super.2012), *appeal denied*, [] 63 A.3d 1243 (2013) (internal quotation marks and citation omitted). Additionally, it is possible for two people to have joint constructive possession of an item of contraband. **Commonwealth v. Sanes**, 955 A.2d 369, 373 (Pa. Super. 2008), *appeal denied*, 601 Pa. 696, 972 A.2d 521 (2009).

**Commonwealth v. Hopkins**, 67 A.3d 817, 820-821 (Pa. Super. 2013), *appeal denied*, 78 A.3d 1090 (Pa. 2013). "An intent to maintain a conscious dominion may be inferred from the totality of the circumstances, and circumstantial evidence may be used to establish a defendant's possession of drugs or contraband." **Commonwealth v. Harvard**, 64 A.3d 690, 699 (Pa. Super. 2013) (citation omitted), *appeal denied*, 77 A.3d 636 (Pa. 2013).

Here, the evidence presented at trial established that Barnes was a passenger in a vehicle that fled from police. Once the vehicle was stopped, as a result of a crash, Barnes was uncooperative and physically assaulted the police officers as they tried to extract him from the vehicle. Furthermore, the firearm was found directly under Barnes's front passenger seat, with the grip and bottom of the butt protruding in plain view. In fact,

Officer Sosnoski explained that the gun was placed in a position as to allow the passenger easy access. N.T., 3/11/2013, at 89.

Barnes argues, however, that the Commonwealth failed to prove his possession of the firearm because there were two other occupants in the vehicle who had access to the gun. Barnes emphasizes that one officer described the back seat passenger as "making all kinds of movement" and refusing to show his hands before he was extracted from the vehicle. N.T., 3/11/2013, at 111. Moreover, Barnes asserts the Commonwealth presented no evidence to establish that he even knew the gun was in the vehicle. In support, he relies on two appellate decisions, which he claims contain similar circumstances: *Commonwealth v. Armstead*, 305 A.2d 1 (Pa. 1973) and *Commonwealth v. Duffy*, 340 A.2d 869 (Pa. Super. 1975). We conclude Barnes is entitled to no relief.

First, the cases Barnes cites for support are readily distinguishable. In *Armstead*, *supra*, police officers conducted a traffic stop, and ordered the driver and the passenger, Armstead, out of the vehicle. The officers who conducted the stop did **not** see a weapon on the front seat. However, when additional officers arrived as backup, they observed a .38 caliber pistol lying in the middle of the front seat. In reversing Armstead's conviction of unlawful possession of a firearm, the Supreme Court held that the Commonwealth failed to prove Armstead knew of the gun's presence. Indeed, the Court explained, "[a]n equally logical argument can be made that the weapon was on the person of the driver during the time appellant

- 7 -

was a passenger, and that the driver discarded the weapon as he got out of the car." **Armstead**, **supra**, 305 A.2d at 2.[6] Here, however, the officers observed the firearm underneath Barnes's seat during their first opportunity to do so.

In **Duffy**, **supra**, the defendant was also a passenger in a car stopped by police for a routine traffic stop. The driver was not the registered owner of the vehicle, and, after he was unable to produce identification, the officer asked him to proceed to the station. Once there, the driver gave police consent to search the vehicle. During the search, they recovered a pistol "far underneath the passenger's side of the front seat, a mask and gloves in the glove compartment, and burglary tools in the rear seat." **Duffy**, **supra**, 340 A.2d at 870. Although Duffy was convicted of possession of the weapon and instruments of crime, this Court reversed that conviction on appeal. In a one-paragraph analysis, we held that "the Commonwealth failed to prove that appellant knew of the presence of the contraband, … and thus failed to prove that appellant had the requisite intent to exercise control." **Id.**, *citing* **Armstead**, **supra**. Conversely, in the present case, the firearm was not discovered "far underneath" Barnes's seat, but rather, protruding from

_____

[6] It merits mention the **Armstead** Court also noted that the Commonwealth had doubts as to the sufficiency of the evidence in that case, and even filed with defense counsel a joint petition for reconsideration when the case was before this Court. However, this Court denied that request. **Armstead**, **supra**, 305 A.2d at 2, n.1.

underneath his seat in plain view of the officers once Barnes was removed from the car.

Moreover, while it is true there were other occupants in the vehicle, the evidence established that Officer Sosnoski observed the firearm protruding from underneath Barnes's seat, with the handle grip facing the front of the vehicle. As the gun was visible to the officers, it was reasonable for the jury to conclude that the gun was also visible to Barnes. Furthermore, the way it was secreted under the seat allowed for easy access by Barnes, and the evidence did not establish that the firearm was easily accessible to either the driver or the back seat passenger, who was sitting behind the driver. Therefore, the totality of the circumstances surrounding the discovery of the firearm provided sufficient circumstantial evidence for the jury to find that Barnes had constructive possession of the weapon.

Therefore, viewing the evidence in the light most favorable to the Commonwealth, we conclude that Barnes's challenge to the sufficiency of the evidence must fail. Accordingly, we affirm the judgment of sentence.[7]

_____

[7] We note that Barnes's sentence reflects the trial court's imposition of a mandatory minimum five years' imprisonment for his conviction of PWID while in "physical possession or control of a firearm" pursuant to 42 Pa.C.S. § 9712.1. However, on November 25, 2013, an *en banc* panel of this Court in **Commonwealth v. Watley**, 81 A.3d 108 (Pa. Super. 2013) (*en banc*), held that the mandatory minimum sentencing provision in Section 9712.1 was unconstitutional in light of the United States Supreme Court's decision in **Alleyne v. United States**, ___ U.S. ___, 133 S.Ct. 2151 (2013). **Id.** at 112, n.2.

*(Footnote Continued Next Page)*

Judgment of sentence affirmed.

Judgment Entered.

_Joseph D. Seletyn_

Joseph D. Seletyn, Esq.
Prothonotary

Date: 8/22/2014

---

*(Footnote Continued)*

In **Alleyne**, the Supreme Court held that "[a]ny fact that, by law, increases the penalty for a crime is an 'element' that must be submitted to the jury and found beyond a reasonable doubt." **Alleyne**, 133 S.Ct. at 2155. The Court expanded upon its holding in **Apprendi v. New Jersey**, 530 U.S. 466 (2000), which applied only to facts that increased the **statutory maximum** for a crime, to include facts which increase the **mandatory minimum** sentence. **Id.** Accordingly, under the holding of **Alleyne**, the "fact" that a defendant sold drugs while in "physical possession or control of a firearm" under Section 9712.1, must be submitted to a jury.

Here, however, the jury found Barnes guilty of both PWID, for the drugs recovered after the struggle just outside the car, and carrying a firearm without a license, for the gun recovered under his seat in the car. Accordingly, the fact that Barnes sold drugs while in possession or control of a firearm was determined by the jury as evident from its verdict. Moreover, because Barnes was sentenced prior to the decision in **Alleyne**, we find that imposition of the mandatory minimum sentence set forth in Section 9712.1 was proper.